# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| CORNELIUS BERNARD WILSON, | : | MOTION TO VACATE |
| BOP ID 35726-019, | : | 28 U.S.C. § 2255 |
| Movant, | : | |
| | : | CIVIL ACTION NO. |
| v. | : | 1:17-CV-873-ODE-CMS |
| | : | |
| UNITED STATES OF AMERICA, | : | CRIMINAL ACTION NO. |
| Respondent. | : | 1:13-CR-476-ODE-CMS |

## FINAL REPORT AND RECOMMENDATION

This matter is before me on (A) Cornelius Bernard Wilson's *pro se* (1) "First Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody" [56] and (2) "Addendum to Supplement to Motion to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody" [58], (B) the government's response [59], and (C) Wilson's reply [60]. Because Wilson is proceeding *pro se*, I have construed his filings liberally. *See, e.g.*, *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998). Nevertheless, for the reasons stated below, I **RECOMMEND** that Wilson's § 2255 motion, as supplemented, be **DISMISSED** and that a Certificate of Appealability be **DENIED**.

To provide context, it is helpful to begin by quoting the summary of facts set forth in the panel opinion deciding the consolidated direct appeals filed by Wilson and two of his co-defendants.

> In early 2012, the [Bureau of Alcohol, Tobacco, and Firearms ("ATF")] received information that [Woodrow] Dixon wanted to rob a drug dealer named "Tony." "Tony" was actually a government agent posing as a drug buyer as part of an undercover effort to investigate Dixon for cocaine distribution. Dixon came into contact with Tony through the efforts of a confidential informant named Brian Guyton, and Dixon told Guyton that he wanted to rob Tony. Dixon explained to Guyton that robbing drug dealers (as opposed to selling drugs) was what he really did, that he had robbed a drug dealer in the past, and that he had a "crew" for these robberies.
>
> When the ATF learned of Dixon's proposal, it used Guyton to feed information to Dixon about Tony's supposed stash house. Dixon, believing the stash house to be real, recruited accomplices–[Kirk] Floyd, Wilson, and Krisdeon Slack–to rob it. The ATF also used Guyton to introduce two undercover agents to Dixon. These agents, going by the names of "Shawn" and "Toby," posed as discontented associates of Tony who, in exchange for a share of the loot, would give Dixon inside information on the location of the stash house and when to rob it. Shawn told Dixon that he could guarantee that at least 25 kilograms of cocaine would be in the stash house.
>
> Dixon hashed out the details of the robbery plan with Floyd, Wilson, Guyton, and the undercover agents over the course of several meetings and phone conversations. He came up with the basic plan for them to carry out the robbery posing as police officers. . . .
>
> The day before the robbery, Dixon told Guyton that he would have to miss the robbery due to an out-of-town work

> assignment, but that Floyd would be in charge. On the day of the robbery, Floyd, Guyton, Wilson, and Slack (Dixon's replacement) met to go over the final details. Floyd also brought equipment–guns, police badges, and police vests. Shawn then called Floyd, telling him to meet at a storage facility. When Guyton, Floyd, Wilson, and Slack arrived, law enforcement converged on the car and arrested them. Dixon was arrested when he returned to Atlanta.

*United States v. Dixon*, 626 F. App'x 959, 962 (11th Cir. 2015).

Dixon, Floyd, Wilson, and Slack were jointly indicted. *See United States v. Dixon*, No. 1:12-CR-205-ODE (N.D. Ga. 2012) [2 therein]. Almost immediately, Slack entered a guilty plea. *See id.* [66 therein]. The following day, Dixon, Floyd, and Wilson were charged in a superseding indictment with conspiracy to commit Hobbs Act robbery (all three men), possession of a firearm in furtherance of a crime of violence (all three men), conspiring to possess with intent to distribute at least five kilograms of cocaine (all three men), and possession of a firearm by a convicted felon (Floyd and Wilson, in separate counts). *See id.* [68 therein].

Wilson moved to have his trial severed from that of his co-defendants, and his motion was granted. *See id.* [126 & 164 therein]. And, in November 2013, Dixon and Floyd were tried and convicted on all counts against them. *See id.* [207 & 209 therein].

The government then offered Wilson an opportunity to avoid trial if he would, among other things, (A) waive indictment, (B) plead guilty to an information charging him with to conspiracy to possess with intent to distribute at least five kilograms of cocaine and knowingly carrying a firearm during and in relation to a drug trafficking offense, and (C) waive his collateral attack rights.  One substantial benefit to Wilson from this plea offer was that the charges to be contained in the information in the new case would carry a mandatory minimum sentence lower by five years than the mandatory minimum sentence for the charges against him contained in the superseding indictment in the original case.  *See Dixon*, 626 F. App'x at 164 ("the government . . . recommend[ed] a lower sentence through the plea agreement compared to what he would have faced under the indictment").  Wilson accepted this deal and agreed to plead guilty to an information filed in *United States v. Wilson*, No. 1:13-CR-476-ODE (N.D. Ga. 2013), the case listed in the caption.  *See* [1, 2, 3 & 3-1].

The Honorable Orinda D. Evans held a hearing pursuant to Federal Rule of Criminal Procedure 11, examined Wilson at length about the basis for and substance of his Plea Agreement, and accepted Wilson's guilty plea.  *See* [24].

A month after pleading guilty, Wilson began filing *pro se* motions, seeking, among other things, to replace his counsel and withdraw his guilty plea. *See, e.g.,* [5, 8, & 12]; *see also* [6 & 7]. At Judge Evans' direction, Magistrate Judge E. Clayton Scofield III appointed new counsel for Wilson. *See* [10]. (This was Wilson's third attorney, as Wilson had changed counsel a year earlier in the original case. *See* 1:12-CR-205 [113 therein]).

At the outset of Wilson's sentencing hearing Judge Evans reviewed his *pro se* motions and denied them all, save his request for new counsel (whom the Court had already appointed). *See* [25].[1] Judge Evans then turned to the motions Wilson had filed through new sentencing counsel, who argued that Wilson should be permitted to withdraw his guilty plea because (A) the government had engaged in outrageous conduct in conducting a reverse sting operation[2] and (B) his previous counsel had provided ineffective assistance. *See id.* at *passim*.

---

[1] Judge Evans denied both the *pro se* motions that Wilson filed in 1:13-CR-476 (the new case), and also the parallel motions he filed in 1:12-CR-205 (the original case).

[2] Wilson's sentencing counsel conceded that similar cases decided by the United States Court of Appeals for the Eleventh Circuit did not support his argument with respect to "outrageous government conduct," but advanced it nonetheless in an effort to preserve for appeal an argument that

5

After counsel outlined these arguments, Wilson was sworn and testified that Guyton had "forced" him to participate in the stash house robbery, that he had advised his previous attorneys of this "fact," and that his first two attorneys were ineffective because they declined to argue that this exonerated Wilson. *See* [25] at 22-27. Judge Evans then asked several follow-up questions, and Wilson acknowledged that he went willingly with the group to what they believed to be a drug stash house and that he expressed no hesitation or reservations about pleading guilty during his Rule 11 hearing. *See id.* at 27-30. Judge Evans ultimately rejected Wilson's motion to withdraw his guilty plea. *See id.* at 45.[3]

On direct appeal, Wilson argued that Judge Evans abused her discretion when she denied his motion to withdraw his guilty plea. *See Dixon*, 626 F. App'x at 961. In support of this argument, Wilson claimed that "there was no factual basis for the plea because an affidavit from Dixon (which Wilson filed before he pleaded guilty) stated that he was not

---

the Eleventh Circuit ought to overrule its own precedents and follow the Ninth Circuit's contrary decisions on this issue. *See id.* at 10.

[3] In a sidebar conference, Wilson's counsel stated that he had been "debating" whether to request that Wilson's competency be evaluated, but then "conced[ed] legal competency" and said he was actually requesting "mitigation" in sentencing. *See* [25] at 30-33.

6

involved in the robbery plan" and "that his counsel 'abandoned' him during the plea process." *Id.* at 964. The United States Court of Appeals for the Eleventh Circuit rejected this argument and Wilson's underlying claims, stating:

> The district court did not abuse its discretion in denying Wilson's motion to withdraw in light of the facts surrounding the plea and his statements at the plea colloquy. Wilson filed the Dixon affidavit *before* he pleaded guilty and yet decided to plead guilty anyway. His lawyer negotiated with the government to recommend a lower sentence through the plea agreement compared to what he would have faced under the indictment, indicating that he did receive close assistance of counsel. At the plea colloquy, he testified that his lawyer adequately assisted him and that he was satisfied with his services. He testified that he was with the robbery crew and knew what they were all going to do. He also testified that he understood the charges against him, that he wanted to plead guilty, and that he was making the plea voluntarily. The record does not support his attempt to override the statements he made at the plea colloquy. *See United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994) ("There is a strong presumption that the statements made during the [plea] colloquy are true."). The district court acted neither arbitrarily nor unreasonably in denying Wilson's motion to withdraw his guilty plea.

*Dixon*, 626 F. App'x at 964 (emphasis in original).[4]

---

[4] Wilson also argued on appeal that the government had engaged in outrageous conduct, but the Eleventh Circuit declined to consider his argument, concluding that it was a non-jurisdictional issue waived by his guilty plea. *See Dixon*, 626 F. App'x at 962 n.2 ("For the reasons stated below, . . . we find that Wilson's plea was voluntary and knowing, and therefore we do not reach the merits of his outrageous government conduct challenge."). It is worth noting, however, that the Eleventh Circuit did

7

Wilson now seeks relief pursuant to 28 U.S.C. § 2255, arguing that (1) his first two attorneys were ineffective because they did not seek a competency evaluation before the Rule 11 hearing, *see* [56] at 12-15, (2) the government engaged in outrageous conduct, *see* [56] at 16, and (3) this Court lacked jurisdiction because it is "a District of Columbia Municipal Corporation tribunal," *see* [58] at 1-2.

The government has responded that it wishes to enforce the collateral attack waiver contained in Wilson's Plea Agreement.  *See* [59] at 1.

Subject only to exceptions not relevant here, Wilson's Plea Agreement states:  "To the maximum extent permitted by federal law, [Wilson] voluntarily and expressly waives . . . the right to collaterally attack his conviction and sentence in any post-conviction proceeding including, but not limited to, motions filed pursuant to 28 U.S.C. § 2255[] on any ground . . . ."  [3-1] at 13.  Furthermore, Wilson signed an acknowledgement stating:  "I understand that the appeal waiver contained in the Plea Agreement will prevent me, with the narrow exceptions stated, from . . .

---

consider the "outrageous government conduct" argument raised by Dixon and Floyd on appeal, and emphatically rejected that argument.  *Id.* at 962-63.

challenging my conviction and sentence in any post-conviction proceeding." *Id.* at 15.

The Eleventh Circuit has held that collateral attack waivers are generally enforceable. *See Williams v. United States*, 396 F.3d 1340, 1341-42 (11th Cir. 2005). All that is required is that a waiver have been made "knowingly and voluntarily" and that "'the government show that either (1) the district court specifically questioned the defendant concerning the . . . waiver during the [plea] colloquy, or (2) it is manifestly clear from the record that the defendant otherwise understood the full significance of the waiver.'" *Id.* at 1342 (quoting *United States v. Bushert*, 997 F.2d 1343, 1351 (11th Cir. 1993) (addressing the enforceability of waivers on direct appeal)).

I have no difficulty concluding in this case that those requirements were met here, based on the text of Wilson's Plea Agreement and the transcript of the Rule 11 hearing, in which Judge Evans specifically questioned Wilson about his waiver. *See* [3-1 & 24].

Moreover, even if I were not persuaded that Wilson's collateral attack waiver is enforceable in this case, I would conclude that his three grounds for relief are meritless. First, Judge Evans—who personally observed Wilson—concluded that his plea was given "freely and voluntarily" at the

9

conclusion of his Rule 11 hearing, *see* [24] at 24, and reaffirmed this conclusion when she denied his motion to withdraw his guilty plea, *see* [25] at 45 ("I'm satisfied that Mr. Wilson made an intelligent, well-informed decision to enter his guilty plea. . . . I'm not persuaded by anything I've heard that there is any basis for withdrawing that guilty plea."). Similarly, the Eleventh Circuit panel—which reviewed the Plea Agreement, together with both the Rule 11 and sentencing hearing transcripts–also concluded that Wilson's plea was "voluntary and knowing." *Dixon*, 626 F. App'x at 962 n.2. Competence is a prerequisite to a guilty plea, *cf. United States v. Rodriguez*, 751 F.3d 1244, 1252 (11th Cir. 2014) (stating the standard of competence required to plead guilty), and it is clear that neither Judge Evans, nor the Eleventh Circuit panel saw anything in the record that can reasonably be interpreted as suggesting that Wilson was incompetent to plead guilty.[5]

---

[5] Moreover, to be entitled to relief for ineffective assistance of counsel, Wilson would have to allege and demonstrate that his attorneys' performance fell below the two-part constitutional standard stated in *Strickland v. Washington*, 466 U.S. 688 (1984), and later cases. The first part of this standard concerns the "reasonableness" of counsel's conduct, and "[f]or a petitioner to show that [his counsel's] conduct was unreasonable, [he] must establish that no competent counsel would have taken the action that his counsel did take." *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc). Here, we have not just one, but

Second, Wilson's "outrageous government conduct" cannot be raised for a second time in these § 2255 proceedings because the issue was raised and resolved in his direct appeal.  *See* n.4, *supra*.  *See also United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000) ("The district court is not required to reconsider claims of error that were raised and disposed of on direct appeal.").

And, third, Wilson's argument that this Court lacked jurisdiction over him for crimes arising out of his role in conspiring in the Northern District of Georgia to rob what he and his co-defendants understood to be a cocaine stash house is patently frivolous.

In short:  because Wilson waived the opportunity to file a collateral attack or, in the alternative, because the three grounds for relief he has raised are meritless, he is not entitled to relief under § 2255, and I have recommended that his § 2255 motion, as supplemented, be dismissed.

I have further recommended that a Certificate of Appealability be denied because Wilson does not meet the requisite standards.  *See Slack v.*

---

*three* counsel (including one whose conduct Wilson has *not* challenged), *all* of whom declined to argue that Wilson was incompetent to plead guilty. Based on the handful of factual allegations contained in Wilson's § 2255 motion, as supplemented, it certainly cannot be said that "no competent counsel would have taken the action" that all three of these lawyers took.

11

*McDaniel*, 529 U.S. 473, 484 (2000) (requiring a two-part showing (1) "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," *and* (2) "that jurists of reason would find it debatable whether the district court was correct in its procedural ruling"); *see also Spencer v. United States*, 773 F.3d 1132, 1138 (11th Cir. 2014) (en banc) (holding that the *Slack v. McDaniel* standard will be strictly applied prospectively).

I **DIRECT** the Clerk to terminate the referral of this case to me.

**SO RECOMMENDED AND DIRECTED**, this 26th day of January, 2018.

_____
Catherine M. Salinas
United States Magistrate Judge